UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

GANZ U.S.A., LLC

and

NOELLE, LLC

          Plaintiffs,

    vs.

TRANSPAC IMPORTS, INC.
          Defendant.

CIVIL ACTION NO.

**VERIFIED COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTION**

## COMPLAINT FOR COPYRIGHT, TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION

Plaintiffs Ganz U.S.A., LLC and Noelle, LLC (together, "Plaintiffs"), by and through their attorneys, file this complaint against defendant Transpac Imports, Inc., and allege and aver as follows:

## NATURE OF THE ACTION

1.    In this action, Plaintiffs seek injunctive and monetary relief for acts of copyright infringement under the laws of the United States, Title 17, United States Code (hereinafter the "Copyright Law"), and for trade dress infringement and unfair competition, under the laws of the United States, Title 15, United States Code (hereinafter the "Lanham Act").

## PARTIES AND JURISDICTION

2.     Plaintiff Ganz U.S.A., LLC ("Ganz") is a Delaware limited liability company with its principal place of business at 3855 Shallowford Road, Suite 600, Marietta, Georgia 30062.

3.     Plaintiff Noelle, LLC ("Noelle") is a Delaware limited liability company with its principal place of business at 32057 64th Avenue, Cannon Falls, Minnesota 55009.

4.     Upon information and belief, Defendant Transpac Imports, Inc. ("Defendant" or "Transpac") is a corporation with its principal place of business at 1050 Piper Drive, Vacaville, California 95688.

5.     This action arises under Title 17 of the United States Code relating to copyrights, and Title 15 of the United States Code relating to trade dress and unfair competition.  This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 1367, and under 15 U.S.C. § 1121.  This Court has jurisdiction over the state claims pursuant to 28 U.S.C. §§ 1332, 1338(b) and 1367(a), and the doctrine of pendent jurisdiction.

6.     This Court has personal jurisdiction over Defendant because Defendant has committed acts of infringement and unfair competition in this District, and/or has sufficient minimum contacts within this District.

602928940.1

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## FACTS RELEVANT TO ALL CLAIMS

**The Development of the Kissing Krystal Product Line**

8.     Noelle is a wholesaler in the giftware industry, marketing and selling its products, both nationally and internationally, through retail stores, over the Internet, through distributors, and through direct mail catalogs.

9.     Ganz is a licensee of Noelle with rights to manufacture and distribute Noelle's "Kissing Krystal" product line.

10.     Noelle's founder and president, Ms. Deborah Groh, authored the first piece in Noelle's "Kissing Krystal" line of decorative ornaments in October of 2007.  Noelle's Kissing Krystal ornaments were brought to market in January of 2008.  The Kissing Krystal ornaments are suspended sculptures/3-D artwork made of glittered, faux mistletoe and other florals that adorn various multifaceted clear acrylic shapes.  They are typically used for Christmas ornamentation.

11.     Noelle is the owner of all rights of authorship in each Kissing Krystal ornament, including copyright.[1]  Each Kissing Krystal ornament is an original work that is in a tangible medium of expression within the meaning of the

---

[1] Noelle's predecessor, Noelle Enterprises, Inc., assigned all of its rights in and to the Kissing Krystal product line, including copyrights, to Noelle.  A copy of the assignment is attached hereto and incorporated herein as Exhibit I.

Copyright Act, and each has been duly registered with the U.S. Copyright Office as follows:

a.  Blessing of the Harvest, Reg. No. VA0001743072 (Exhibit A)

b.  Christmas Kissing Krystal Angel, Reg. No. VA0001743066 (Exhibit B)

c.  Diamond Kissing Krystal, Reg. No. VAu001117953 (Exhibit C)

d.  Frosted Sugarplum Winterwonderland, Reg. No. VAu001117956 (Exhibit D)

e.  Kissing Krystal, Reg. No. VA0001739705 (Exhibit E)

f.  Kissing Krystal Maple Leaf, Reg. No. VA0001841655 (Exhibit F)

g.  Kissing Krystalball, Reg. No. VAu001117954 (Exhibit G)

h.  Mini Kissing Krystal, Reg. No. VA0001743070 (Exhibit H)

(collectively, the "Kissing Krystal Collection").

12.    The Kissing Krystal Collection is unique and distinctive in the gift industry, and is tremendously popular with customers.  Noelle sold more than 100,000 units in the first year.  Since then, the Kissing Krystal Collection has enjoyed substantial market success and is now one of the most popular, if not the most popular, single holiday product line in the United States.  Approximately 1.5 million units of Kissing Krystal ornaments have been sold since 2009, with a MSRP value of those sales approaching $20 million.

602928940.1

13.    The Kissing Krystal Collection is sold throughout thousands of gift retailers nationwide, including Kirkland's, Macy's, and Bed, Bath & Beyond. These retailers also market and advertise the Kissing Krystal Collection. A search on the Internet search engine Google for the quoted trademark "Kissing Krystal" returns over 10,000 results, showing pages upon internet pages of third party retailers marketing and promoting the products.

14.    The Kissing Krystal Collection has earned industry rankings and accolades for holiday gift items. Gift Beat, the gift industry's premier rankings newsletter, now ranks Kissing Krystal ornaments among the top holiday gift items in the nation.

15.    The Kissing Krystal Collection is shown at industry trade shows. Retail catalogues and gift industry trade publications feature Noelle's line of Kissing Krystal products in their publications. These industry publications are sent to thousands of retailers. *The Market Magazine*, America Mart Atlanta's premier catalog, advertises Noelle's Kissing Krystal Collection. One hundred twenty-five thousand (125,000) retailers receive a copy of *The Market Magazine*.

16.    Noelle's Kissing Krystal Collection was featured on the cover of Palmer Marketing's catalog, a publication designed by a premier marketing firm in the gift industry and distributed to millions of consumers nationwide each year. A

5

copy of such catalog cover featuring a Kissing Krystal product is attached hereto as Exhibit J.

**The Kissing Krystal Trade Dress**

17.     The commercial success of the Kissing Krystal Collection is in part due to the unique and distinctive manner in which Noelle markets the product line. Noelle has made substantial investments of money and hours advertising, marketing, and promoting the Kissing Krystal Collection.  These advertisements and marketing efforts feature the unique designs of the ornaments, namely, the combination of a multifaceted clear acrylic shape adorned with glittered floral accents.  In addition, the ornaments are typically displayed on a tree.

18.     As a result of such commercial success and investments of time, effort, and resources in the development of its distinctive and well-known trade dress designs, Noelle's trade dress has acquired secondary meaning amongst consumers and is widely recognized as emanating from a single source and reflective of the highest quality standards.  Noelle has accordingly built up substantial goodwill and selling power in its Kissing Krystal Collection trade dress, and this trade dress has become an asset of tremendous value.

19.     Consumers of gift items have come to associate the unique designs and look and feel of the Kissing Krystal Collection with Noelle.  Consumers have also come to associate the manner in which the Kissing Krystal ornaments are

602928940.1

displayed, marketed and sold with Noelle.   These elements constitute a distinctive and protectable trade dress of Noelle (the "Kissing Krystal Trade Dress").

20.   This is not the first time infringers have ripped off the Kissing Krystal successful line of products.  Noelle has taken legal action against at least three other competitors who were also reaping where they had not sown.  This further demonstrates the existence of secondary meaning in the marketplace.

**The Licensing Agreement with Transpac Imports**

21.   Because of the tremendous commercial success of the Kissing Krystal Collection, and to accommodate the rapidly increasing demand for Kissing Krystal ornaments, Noelle entered into an exclusive licensing agreement with Defendant Transpac Imports, Inc.

22.   The terms of this agreement allowed Transpac to produce, manufacture, sell, and distribute the ornaments comprising the Kissing Krystal Collection in accordance with Noelle's standards.  In January of 2009, Transpac began actively showing and selling the Kissing Krystal Collection pursuant to the licensing agreement.  Noelle also continued to market and sell the product.

23.   The licensing agreement with Transpac terminated on December 28, 2013.  Pursuant to the terms of the licensing agreement, Transpac retains sell-off rights for inventory purchased prior to the termination date.

602928940.1

**The Infringing Product Line**

24.     Defendant is now showing and selling its own line of infringing Kissing Krystal ornaments consisting of suspended sculptures/3-D artwork made of glittered, faux mistletoe and other florals that adorn various multifaceted clear acrylic shapes (the "Infringing Kissing Krystal Ornaments").  A photo showing an example of one of the Infringing Kissing Krystal Ornaments is attached hereto as Exhibit K.

25.     Transpac gained valuable confidential business information as Noelle's trusted licensee.  Transpac helped develop the marketplace, and profited from the success of the Kissing Krystal product line.  Now, Transpac is reaching out to those same Kissing Krystal customers to sell them the Infringing Kissing Krystal Ornaments at much cheaper prices.

26.     Defendant intentionally has usurped Plaintiffs' market.  Defendant knows the value of the license for the legitimate products.  Defendant knows the customers.  It knows the advertising channels.  It knows Plaintiffs' manufacturing details, including costing.

27.     With this leg up in the marketplace as a former trusted licensee, Defendant is now substituting inferior quality knockoffs and passing them off as a continuation of the Kissing Krystal product line.  Defendant has not yet even

finished selling off the licensed product, and is already taking orders from its customers for the knockoffs.

28.     At the Atlanta International Gift & Home Furnishings Market trade show in January, 2014 (the "Show"), Defendant is displaying the Infringing Kissing Krystal Ornaments in the same fashion as it did when it sold the licensed Kissing Krystal Collection, namely, on a metal rack Noelle provided to it. Defendant has made no attempt to identify the knockoffs as its own products.  It has no brand name for the line or other markings on the displayed goods.  Worse, it is encouraging buyers to believe the knockoffs are genuine.

29.     Defendant has succeeded in duping buyers.  Actual consumer confusion has occurred among the retail buyers and is likely to continue.  At the Show, Defendant's salespeople have represented that the Infringing Kissing Krystal Ornaments are the continuation of the Kissing Krystal product line and failed to identify the Infringing Kissing Krystal Ornaments as their own.  Plaintiffs overheard buyers ask such things as, "What have you done to Kissing Krystals?" Defendant's salesperson replied, "These are the next ones in the Kissing Krystals line."

30.     The ultimate consumers are likely to be confused as well.

31.     This conduct is even more egregious because Transpac continues to sell the real Kissing Krystal product under post-termination terms of the terminated

license agreement, all the while unfairly competing by selling the Infringing Kissing Krystal Ornaments in the same channels of trade to the same buyers.

32.    As a former licensee, Transpac well knows that Plaintiffs have protectable rights in the Kissing Krystal Collection and Kissing Krystal Trade Dress.  Just last year, Transpac, as licensee, insisted that Noelle sue a competitor for selling very similar designs that it viewed as infringing.  Transpac cannot now deny that it is infringing upon Plaintiffs' protectable rights by selling the Infringing Kissing Krystal Ornaments.

33.    Defendant's conduct is intentional and inexcusable.

**The Infringements Are Causing Irreparable Harm**

34.    Plaintiffs will suffer irreparable harm if Defendant's Infringing Kissing Krystal Ornaments continue to be sold in the marketplace.  No amount of money could compensate Plaintiffs for the harm to the reputation and good will associated with the high-quality Kissing Krystal Collection.

35.    Plaintiffs have no control over the quality of Defendant's Infringing Kissing Krystal Ornaments.

36.    Of course, the sales of the infringements make Plaintiffs' famous Kissing Krystal brand less distinctive, which also causes irreparable harm.

602928940.1

## COUNT I
### *Copyright Infringement*

37.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs, as if set forth fully herein.

38.     Plaintiffs have been and still are the holders of all exclusive rights under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and all amendments thereto, to reproduce, distribute, and otherwise exploit the Kissing Krystal Collection throughout the United States and the world.

39.     Upon information and belief, Defendant has copied, and continues to copy, the Kissing Krystal Collection, and Defendant's Infringing Kissing Krystal Ornaments are substantially similar to Plaintiffs' Kissing Krystal Collection.

40.     Upon information and belief, Defendant's Infringing Kissing Krystal Ornaments were and are distributed in interstate commerce.

41.     The manufacturing, advertising, selling and distribution of Defendant's Infringing Kissing Krystal Ornaments constitutes unauthorized reproduction and distribution of the Kissing Krystal Collection.

42.     Upon information and belief, Defendant's infringement of the Kissing Krystal Collection has been and continues to be carried out with Defendant's full knowledge that such elements are protected by copyright, and that in doing the acts complained of, Defendant has willfully and intentionally infringed Plaintiffs' copyright in and to the Kissing Krystal Collection.

602928940.1

43.    Plaintiffs are without remedy at law, in that damages are extremely difficult to ascertain.

44.    Plaintiffs have sustained damages as a result of Defendant's wrongful acts as alleged herein.  Plaintiffs are presently unable to ascertain the full extent of the money damages they have suffered by reason of said acts of copyright infringement.

45.    Upon information and belief, Defendant has obtained gains, profits and advantages as a result of its infringing acts as alleged herein.  Plaintiffs are presently unable to ascertain the full extent of gains, profits and advantages Defendant has obtained by reason of its respective acts of copyright infringement.

46.    Plaintiffs have suffered and continue to suffer irreparable harm and injury as a result of the aforesaid infringing acts of Defendant, and will continue to do so unless Defendant is preliminarily and permanently restrained and enjoined by the Court from further violation of Plaintiffs' copyright rights.

<u>**COUNT II**</u>
<u>***Federal Unfair Competition and Trade Dress Infringement***</u>

47.    Plaintiffs repeat and re-allege the allegations set forth above in paragraphs 1-45, as if fully set forth herein.

48.    Upon information and belief, Plaintiffs' Kissing Krystal Collection and Kissing Krystal Trade Dress was inherently distinctive and/or had acquired

secondary meaning in the giftware industry prior to the introduction of Defendant's Infringing Kissing Krystal Ornaments.

49.    Upon information and belief, Defendant is passing off its Infringing Kissing Krystal Ornaments as those of Plaintiffs, or otherwise are unfairly imitating Plaintiffs' Kissing Krystal Collection and Kissing Krystal Trade Dress, and are likely to cause confusion and mistake with Infringing Kissing Krystal Ornaments in the minds of the purchasing public as to the source of the goods and services and/or the affiliation of Defendant and Plaintiffs, and to cause consumers to believe such goods and services originate from, are provided by, or are endorsed or sponsored by Plaintiffs when, in fact, they are not.

50.    Defendant's use of the Infringing Kissing Krystal Ornaments and imitation of the Kissing Krystal Trade Dress in connection with ornaments of acrylic glass, as set forth above, constitutes use in commerce which is likely to cause confusion, or cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by Plaintiffs, in violation of 15 U.S.C. § 1125(a).

51.    The acts of Defendant complained of herein also constitute an attempt to trade on the goodwill which Plaintiffs have developed in connection with the Kissing Krystal Collection, to the detriment of Plaintiffs.

52.    On information and belief, Defendant's acts of trade dress infringement complained of herein were intended to cause and have caused confusion and deception of the public, misleading prospective purchasers, distributors and retailers as to the true source, connection, sponsorship, affiliation, association, or approval of Defendant's products.

53.    Plaintiffs are without an adequate remedy at law, in that damages are extremely difficult to ascertain.

54.    As a result of Defendant's acts of trade dress infringement as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues and profits, and will continue to do so unless Defendant is preliminarily and permanently restrained and enjoined by the Court from further violating Plaintiffs' rights.

## COUNT III
### *Federal False Advertising*

55.    Plaintiffs repeat and reallege paragraphs 1 through 53 of this Complaint as if fully set forth herein.

56.    Plaintiffs' Kissing Krystal Trade Dress and Kissing Krystal Collection are individually distinctive, have been used throughout the United States, and are well known to the trade and members of the purchasing public.  The public

602928940.1

generally associates and identifies Plaintiffs' Kissing Krystal Trade Dress and Kissing Krystal Collection with Plaintiffs.

57.     Defendant's conduct in the manufacture, distribution, advertising, sale, offering for sale, and/or other use of Defendant's Infringing Kissing Krystal Ornaments bearing Plaintiffs' Kissing Krystal Trade Dress constitutes false designation of origin or sponsorship of said products and tends falsely to represent that Defendant's Infringing Kissing Krystal Ornaments originate from Plaintiffs or that Defendant's Infringing Kissing Krystal Ornaments and/or Defendant has been sponsored, approved, or licensed by Plaintiffs, or are in some way affiliated or connected with Plaintiffs.  Such conduct of Defendant is likely to confuse, mislead and deceive Defendant's customers, purchasers, and members of the public as to the origin of Defendant's Infringing Kissing Krystal Ornaments or cause said persons to believe that those products and/or Defendant has been sponsored, approved, authorized, or licensed by Plaintiffs or are in some way affiliated or connected with Plaintiffs, all in violation of 15 U.S.C. § 1125(a).

58.     Upon information and belief, Defendant's actions were done willfully with full knowledge of the falsity of such designations of origin and false description or representations, and with the express intent to cause confusion, and to mislead and deceive the purchasing public.

59.     Plaintiffs are without an adequate remedy at law, in that damages are extremely difficult to ascertain.

60.     As a result of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and have sustained serious loss of revenues and profits, and will continue to do so unless and until Defendant is preliminarily and permanently restrained and enjoined by the Court from further violating Plaintiffs' rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs ask this Court to:

1.     Grant a preliminary injunction and thereafter a permanent injunction restraining and enjoining Defendant and any and all principals, officers, agents, servants, employees, attorneys, representatives, successors and assigns of Defendant, and all those in privity, concert or participation with Defendant and all those who receive actual notice of this order, from:

(i)     directly or indirectly infringing the Kissing Krystal Collection and the Kissing Krystal Trade Dress (collectively the "Kissing Krystal Intellectual Property"), in any manner, including generally, but not limited to manufacturing, distributing, advertising, selling, and/or offering for sale and distribution any merchandise which infringes the

Plaintiffs' Kissing Krystal Intellectual Property, and specifically;

    a.    using the Kissing Krystal Trade Dress or any trade dress confusingly similar thereto, or any reproduction, counterfeit, copy, or colorable imitation of said trade dress in connection with the manufacture, distribution, advertising, sale, offering for sale, and/or other use of the merchandise pictured in Exhibits A-H hereto;

    b.    applying said trade dress or any such reproduction, counterfeit, copy, or colorable imitation to any label, sign, print, package, wrapper, receptacle, or advertisement used in connection with the manufacture, distribution, sale, and/or offering for sale, of said products or services;

    c.    manufacturing, distributing, selling, and/or offering for sale, said products and services or any other unauthorized products, which picture, reproduce, or utilize the likeness of or which copy or bear a substantial similarity to the Kissing Krystal Collection; or

    d.    manufacturing, distributing, selling, or offering for sale or in connection thereto any unauthorized promotional

602928940.1

materials, labels, packaging or containers which picture, reproduce or utilize the likenesses of, or which bear substantial similarity to the Kissing Krystal Collection;

(ii)     passing off, inducing, or enabling others to sell or pass off any items which are not authorized products of Plaintiffs as and for authorized products of Plaintiffs;

(iii)     using any trademark, trade name, trade dress, logo or design that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, Defendant's customers, or members of the public that unauthorized merchandise manufactured, distributed, advertised, sold and/or offered for sale by Defendant originates from Plaintiffs, or that said merchandise has been sponsored, approved, or licensed by or associated with Plaintiffs or is in some way connected or affiliated with Plaintiffs;

(iv)     engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, Defendant's customers, and/or members of the public to believe that the actions of Defendant or Defendant itself is sponsored, approved, or licensed by Plaintiffs, or are in some way connected or affiliated with Plaintiffs;

(v)     affixing, applying, annexing or using in connection with the

18

manufacture, distribution, advertising, sale, and/or offering for sale or

other use of any goods or services, a false description or

representation, including words or other symbols, ending to falsely

describe or represent such goods as being those of Plaintiffs;

(vi)   otherwise competing unfairly with Plaintiffs in an manner;

(vii)   diluting or causing injury to Plaintiffs' business reputation and

to the distinctiveness of the Kissing Krystal Trade Dress or any of

Plaintiffs' ornaments by unauthorized use of the same;

(viii)   destroying or otherwise disposing of any of the hereinabove

mentioned products, or any documents pertaining to them or their

acquisition or to any sales or transfer thereof heretofore made; and

(ix)   assisting, aiding or abetting another person or business entity in

engaging or performing any of the activities enumerated in

subparagraphs (i) through (vii) above.

2.   Find that Defendant has infringed Plaintiffs' Kissing Krystal

Collection in violation of federal law by the acts complained of herein.

3.   Find that Defendant has infringed Plaintiffs' Kissing Krystal Trade

Dress and competed unfairly in violation of federal law by the acts complained of

herein.

4.   Find that Defendant has utilized false designations of origin and/or

false descriptions in violation of federal law by the acts complained of herein.

5.    Issue an order requiring Defendant and any and all principals, officers, agents, servants, employees, attorneys, successors, and assigns, and all those in active privity or concert with Defendant who receive actual notice of said order, to deliver to Plaintiffs for destruction all infringing merchandise in their possession or under their control which bears unauthorized simulations, copies or colorable imitations of the Kissing Krystal Intellectual Property.

6.    Issue an order requiring recall of any infringing merchandise sold and requiring Defendant to issue written notices to all those previously offered the infringing merchandise and those to whom the infringing merchandise has been sold notifying them of the injunction.

7.    Require Defendant to disseminate corrective advertising, at Defendant's expense and upon Plaintiffs' approval, that informs consumers, the trade and the public at large of Defendant's unlawful conduct as complained of herein and of the judgment requiring Defendant to cease such unlawful conduct, and/or require Defendant to pay Plaintiffs' costs in producing and disseminating such corrective advertising.

8.    Direct Defendant to file with this Court and serve on counsel for Plaintiffs, within thirty (30) days after entry of the Injunction, a written report under oath setting forth in detail the manner in which Defendant have complied

with the foregoing paragraphs.

9.     Award Plaintiffs monetary relief in an amount to be fixed by the Court in its discretion as just, including all damages sustained by Plaintiffs, and/or all of Defendant's profits or gains of any kind resulting from their willful infringement, said amount to be trebled, and exemplary damages in view of the intentional nature of the acts complained of herein pursuant to 15 U.S.C. § 1117.

10.     In the event Plaintiffs elect statutory damages in lieu of actual damages pursuant to the Copyright Law, order Defendant to pay such statutory damages as to the Court shall appear just, as specified in 17 U.S.C. § 504(c)(1), for Defendant's acts of copyright infringement.

11.     Award to Plaintiffs their attorneys' fees and costs and expenses of litigation pursuant to 17 U.S.C. § 505.

12.     Award to Plaintiffs their attorneys' fees, due to the exceptional nature of this case, and all of Plaintiffs' costs and expenses of litigation, pursuant to 15 U.S.C. § 1117(a).

13.     Order an accounting and render judgment against Defendant for all profits wrongfully derived by Defendant by reason of its copyright infringement, false designation of origin, trade dress infringement, unfair competition, and dilution.

14.     Award all damages adequate to compensate Plaintiffs for Defendant's

acts of copyright infringement, false designation of origin, trade dress

infringement, unfair competition, and dilution.

15.   Require Defendant to pay Plaintiffs prejudgment and post-judgment

interest at the applicable rates on all amounts awarded.

16.   Grant to Plaintiffs such other and further relief as the Court may deem

just, proper and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

A trial by jury is hereby demanded on all issues so triable.


Dated: January 10, 2014                    _s/ Lisa N. Collins_____
                                           Lisa N. Collins
                                           Georgia Bar No. 141523
                                           BAKER & HOSTETLER LLP
                                           1180 Peachtree Street NE, Suite 1800
                                           Atlanta, GA 30309-7512
                                           Telephone: 404.256.8231
                                           Facsimile: 404.459.5734
                                           lncollins@bakerlaw.com
                                           Counsel for Plaintiffs,
                                           Ganz U.S.A., LLC and Noelle, LLC

                                           **Of Counsel:**
                                           Deborah A. Wilcox, Esq. (Ohio # 0038770)
                                           Christina J. Moser, Esq. (Ohio # 0074817)
                                           Courtni E. Thorpe, Esq. (Ohio #0079311)
                                           Baker & Hostetler LLP
                                           3200 PNC Center
                                           1900 East 9th Street
                                           Cleveland, OH 44114-3485
                                           Telephone:  216-621-0200
                                           Facsimile:   216-696-0740
                                           dwilcox@bakerlaw.com

cmoser@bakerlaw.com
cthorpe@bakerlaw.com